## MARY ANN HENRY *v.* JAMES W. FOWLER.

The plaintiff, while sick and in expectation of death, delivered to the defendant, her attorney, a negotiable bond, to be held by him in trust for the use of her son. The plaintiff having recovered, notified the defendant that she revoked the trust, and demanded the return of the security. In an action brought by the plaintiff for damages for the conversion of the bond, the defendant interposed an answer: (1) that he held the bond and its proceeds upon and under the trust created by the plaintiff; and (2) that he had a lien upon the same for services as plaintiff's attorney: *Held,* that it being shown, on a motion to strike out the answer as sham, that the defendant had sold the bond, and that the plaintiff had notified him that she revoked the trust, the answer was sham and irrelevant, and should be stricken out. The defendant should show, at least, that he had sold the bond for the purpose of reinvesting the proceeds, before receipt of the notice of revocation.

*Held,* further, that an attorney has no lien except upon such papers of his client as have come into his hands for the purpose of business, in the ordinary course of his professional employment.

A trustee has a lien upon the estate or property in his hands for the expenses incurred by him in the discharge of his trust, but not for other services in no way connected with the trust.

APPEAL by the plaintiff from an order of special term denying a motion to strike out an answer as sham and irrelevant. The action was for damages for the conversion of a United States bond. The answer alleged—1st, that the bond had been given defendant in trust for certain purposes; and, 2d, that the defendant had a lien on the bond, for professional services, to the amount of $1,000. A motion was made at special term to strike out the answer as sham and irrelevant, and on the hear-

ing it appeared that the plaintiff, being sick and regarding herself as in great danger, sent for her attorney, the defendant, and desiring to make provision for a son by a former marriage, was advised by defendant to give certain securities, including the bond—for the conversion of which this action was brought —to a trustee, to hold the same in trust for the benefit of the son. The plaintiff recovered, and finding that the defendant had sold the bond, notified him of the revocation of the trust by herself and the beneficiary, and demanded the return of the security. The defendant claimed that the revocation had been received after he had sold the bond for the purpose of reinvestment, but he failed to show how he had invested the money received. The defendant further argued that an order of the court would be necessary to revoke the trust. From an order denying the motion, the plaintiff appealed to the general term.

*Davis & Edsall*, for appellants.

*The respondent in person.*

BY THE COURT.—DALY, F. J.—This motion should have been granted. The answer is false upon the defendant's own showing. It avers that the bond mentioned in the complaint, and the proceeds thereof, are still held by the defendant, upon and subject to the trusts alleged to have been created by the plaintiff. This answer was sworn to on the 13th of April, 1869, and the defendant admits in his affidavit, that on the 25th day of July, 1868, he sold the bond to Vermilyea & Co., a fact which he could not deny, as the affidavit of Mr. Vermilyea, proving the fact, was used by the plaintiff, with the other affidavits, upon which the motion was made. The defendant swore in his affidavit that he sold the bond to Vermilyea & Co. at the time stated, and invested the proceeds in other securities, but does not state what securities he invested the proceeds in, nor does he name any one of them. It is difficult to conjecture why, in the fulfillment of such a trust, it was necessary to sell a registered United States bond, bearing interest, unless some advantage, benefit, or greater security to

the trust was to be obtained thereby. Not only is no reason given for changing a security so ample and secure as a United States bond in July, 1868 ; but, as I have stated, he does not disclose what the new securities were or are, a very material omission, which gives rise to the grave suspicion that the statement that he invested the proceeds in new securities is untrue, when it is taken in connection with the false statement that the bond was still held by him, when the answer was sworn to, and his further statement that he gave the bond and the other securities to Mr. Halstead, the cashier of the bank, in a package with his name and a memorandum of the contents endorsed thereon, for safe keeping, and that they remained in Mr. Halstead's custody for two months; whereas Mr. H. swears that after the bond was delivered to the defendant by him, upon the plaintiff's order, the defendant never returned it, or any other security to him, or to the bank, for safe keeping or otherwise, which brings the defendant's whole statement into discredit. *Falsus in uno, falsus in omnibus.*

In view of what has been already set forth, the plaintiff's account of what occurred at the bedside, when she was lying in immediate expectation ·of death, corroborated as it was by the affidavits of two disinterested persons, who were present, was entitled to credit as against the account given in the defendant's affidavit, which was sustained only by the affidavit of the notary, who was not present when the order upon the bank, for the bond, was obtained from the plaintiff by the defendant, and whose affidavit of what occurred in his presence is very guardedly drawn, being limited to the statement " that Mrs. Henry did not express any astonishment or alarm at the presentation of the assignments, or either of them, or of said United States bond for the execution of such payment thereof, but appeared to have been expecting said Fowler with said papers." While intended to have that effect, it does not meet and deny the circumstantial statement sworn to by Mr. and Mrs. Smith, who give not only the incidents, but the conversation that occurred between Mrs. Henry and the defendant. Nor does it deny what the plaintiff's daughter swore to, that the plaintiff said, " Mr. Fowler, if I recover, you will

return all these papers to me," and his answer, " Certainly, Mrs. Henry, that will be all right." At best, the notary's affidavit is but the conclusion of his mind that she did not express any alarm, that she appeared to have been expecting, &c., which it is always very safe to do in an affidavit, but is not an answer to detailed circumstances and actual conversation in other affidavits. If the notary had sworn that he was present, and saw and heard all that took place, and then avowed, under oath, that what was sworn to by Mrs. Henry, Mr. and Mrs. Smith, and by Mr. Hanford, never occurred, and was false, it would have the effect of a traversing affidavit, and not otherwise.

But in addition to this, if the trust was created as the defendant states, and the plaintiff and her witnesses deny, it was, upon the defendant's own showing, a trust that was revocable. (*Story's Equity Jurisprudence*, § 1196, § 972.) It was voluntary, without consideration, and was as it might be, revoked, before the beneficiaries had become parties to it, by their express assent, after notice. It was therefore absolutely gone. The plaintiff having shown that she had revoked it, it was incumbent upon the defendant, in answer to such a motion, to show by his affidavit that he had sold the bond for the purpose of reinvestment, before he had any notice of the revocation of it by the plaintiff. It is suggested in the appellant's points that he claimed upon the motion, that his affidavit showed this, and that upon such assumption, the judge below denied the plaintiff's motion. If that were the ground upon which Judge Barrett denied the motion, then it is sufficient to say that the defendant's affidavit shows nothing of the kind.

The second defense in the answer, that the defendant had rendered professional services to the plaintiff, and for these services had a lien upon the bond, was both irrelevant and sham. An attorney has no lien except upon such papers of his client as have come into his hands for the purpose of business, in the ordinary course of his professional employment (*Stevenson* v. *Blacklock*, 1 Maule and Selw. 535), which was not the case here, as the bond came into the defendant's hands upon his own statement as a trustee, and he could, conse-

Talcott v. Rozenberg.

quently, have no lien upon it in his professional character as an attorney. A trustee has a lien upon the estate or property in his hands for the expenses incurred by him in the discharge of his trust ( *Worrall* v. *Harford*, 8 Ves. 4); but not for other services in no way connected with the trust. The answer does not set up any lien or claim for expenses incurred in the execution of the trust; but a claim of $1,000 for services rendered by the defendant as attorney and counsellor-at-law for the plaintiff, in drawing instruments, conducting various suits and proceedings for her in court, giving her counsel and advice about her business, and for money laid out and expended on her, in and about the same; for which, the answer avers, he has a lien upon all the papers, security and property in his hands, belonging to her: which he may have, but not upon the bond which came into his hands in his alleged capacity as trustee, and for the commission of which by him, this action is brought. This branch of the answer, like the other, is wholly irrelevant and sham.

The order should be reversed, the answer stricken out, and the plaintiff should be allowed to take judgment, which is ordered accordingly.